UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MINDY MICHELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV00913 ERW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant United States of America's ("Government") Motion for Summary Judgment [ECF No. 19], and Government's Motion to Dismiss for Lack of Jurisdiction [ECF No. 27].

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

On May 18, 2012, Mindy Michelson ("Plaintiff") filed a Complaint against Government, asserting a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et. seq.*, and 28 U.S.C. § 1346(b)(1), for money damages as compensation for personal injuries allegedly caused by negligent and wrongful acts of Government's employees while acting within the scope of their offices and employment [ECF No. 1]. In her Complaint, Plaintiff alleges that she was visiting the St. Louis Gateway Arch Museum ("Museum") at the Jefferson National Expansion Memorial in the City of St. Louis on April 9, 2009, and that she sustained severe and permanent injuries, including a left distal radius fracture, after falling when she slipped on liquid while walking in the Museum. According to Plaintiff, the maintenance and custodial duties for the Museum were performed by Government employees acting within the course and scope of their employment. Plaintiff's Complaint alleges that Government knew, or should have known, liquid

was on the floor in the Museum, creating a dangerous and defective condition, and posing reasonable risk of injury to persons such as Plaintiff.  Plaintiff further alleges Government failed to inspect the area where the liquid was located, and failed to discover the dangerous defective condition.  She further claims Government failed to: 1) barricade the dangerous defective condition or warn the public, and particularly Plaintiff, of its existence; 2) repair or otherwise remedy the condition; 3) use ordinary care to make the area reasonably safe; and 4) remove the dangerous condition.

In its Answer to Plaintiff's Complaint, Government admitted that National Park Service ("NPS") employees performed maintenance or custodial duties for the Museum, and affirmatively stated that "concessioner Canteen Services also performed maintenance and/or custodial duties relating to the soda/water machines on the premises" [ECF No. 7].  Government denied the Complaint's allegations of causation, negligence, or carelessness, demanding strict proof thereof, and asserted several affirmative defenses, including that the FTCA does not mandate a waiver of sovereign immunity for acts or omission of non-NPS employees, and that Plaintiff's alleged injuries were caused solely by the acts of omissions of other parties who were not agencies or employees of Government for whom it has any liability pursuant to the FTCA.

Subsequently, Government filed its Motion for Summary Judgment, and Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF Nos. 19-21, 27-28].  Plaintiff submitted her Responses to both motions, and Government filed its Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [ECF Nos. 23-26, 29, 30].  In light of the Court's disposition of Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 27], the Court will deny, as moot, the Motion for Summary Judgment [ECF No. 19].

## II.     LEGAL STANDARD:  Motion to Dismiss for Lack of Subject Matter Jurisdiction

The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

Rule 12(b)(1) provides that a claim may be dismissed for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge to a Complaint can be either to the face of the Complaint, or to the factual truthfulness of its allegations. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). When a Complaint is facially challenged, courts presume all of the factual allegations concerning jurisdiction are true. *Id.* The motion succeeds if the plaintiff fails to allege a necessary subject-matter jurisdiction element. *Id.*

## III.    DISCUSSION

In its motion to dismiss, Government requests, pursuant to Federal Rule of Civil Procedure 12(b)(1), an Order dismissing Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction under the FTCA [ECF No. 27]. Government claims Plaintiff's action is jurisdictionally barred and must be dismissed, because it arises from the alleged negligence of a contractor with the United States, and not from the acts of omissions of any federal agency or its employees. Government quotes the following language from the memorandum Plaintiff filed

3

opposing Government's summary judgment motion: "Defendant United States . . . has a maintenance plan in effect between itself and a concessioner that required concessioner to provide housekeeping services for (a) floor area within six feet of the vending machines and drink spills anywhere in the lobby or entryways" [ECF No. 28 at 1].  Government contends Plaintiff's action should be dismissed for lack of subject matter jurisdiction, because the concessioner, Canteen Vending Services ("Canteen Vending"), is an independent contractor, and is in no way an employee of Government acting in the course and scope of its employment.

In her Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Plaintiff claims that Government's concessioner "agreed to be bound by signing the contract to the express and specific oversight of [Government] in its activities and provision of services[,]" [ECF No. 30 at 4].  Plaintiff appears to argue that Government exercised such pervasive control over the work performed by Canteen Vending so as to transform Canteen Vending's employees into Government's employees for purposes of FTCA liability.  She argues that "the circumstances present in this case at a minimum provide sufficient evidence on a motion to dismiss for lack of subject matter jurisdiction that Defendant controlled the activities of the concessioner" [ECF No. 30 at 4, 5].

Landowners owe invitees the duty to use reasonable and ordinary care to prevent injury to the invitees.  *Pauley v. Ball Metal Beverage Container Co.*, 460 F.3d 1069, 1074 (8th Cir. 2006).  This duty of care shifts to independent contractors when landowners relinquish possession and control of the premises to the contractors, and the landowner is relieved of liability during the period of relinquishment.  *Id*.

The FTCA imposes liability upon the United States for torts committed by its employees. 28 U.S.C. § 1346(b); *Knudson v. United States*, 254 F.3d 747, 750 (8th Cir. 2001).  However, the

United States is not responsible for the torts of government contractors. *Knudson*, 25 F.3d at 750. Determining whether an individual or entity is an employee or a contractor requires an evaluation of the extent to which the government has the authority to supervise the individual's or entity's day-to-day operations. *Id*. The amount of control the government exercises over the individual's or entity's detailed physical performance is the crucial question. *Logue v. United States*, 412 U.S. 521, 527-28 (1973). In some instances, the government may exercise such pervasive control over the work performed by the employees of its independent contractor that, for purposes of the FTCA, the contractor's worker are essentially government employees. *Kirchmann v. United States*, 8 F.3d 1273, 1275 (8th Cir. 1993).

Because the United States can be sued only to the extent that it has waived its sovereign immunity, courts must give due regard to the exceptions to waivers of immunity, including the independent contractor exception. *United States v. Orleans*, 425 U.S. 807, 814 (1976). Plaintiff argues that, due to the Government's contract with Canteen Services, Government is subject to her FTCA claim, because the concessioner "agreed to be bound by signing the contract to the express and specific oversight of the Defendant in its activities and provision of services" [ECF No. 30 at 4].

An entity that hires an independent contractor has the right to ensure compliance with the parties' contract; however, reserving the right to ensure general performance of the contract does not convert an independent contractor relationship into an employer-employee relationship. *Pauley*, 460 F.3d at 1074. The Court notes that, although she contends the contract is "littered with provisions that place the ultimate control, demand[] specific requirements in the maintenance and allow[] for the oversight and review of basically all services that might be rendered by the concessioner[,]" Plaintiff fails to direct this Court to those provisions that do so;

5

and the Court's examination of the contract fails to reveal terms indicating NPS supervision of Canteen Services' day-to-day operations, or control of the detailed physical performance of Canteen Services' physical performance. In her discussion of the Concession Contract, Plaintiff states, "Exhibit A provides among many other topics that the Superintendent 'will review, supervise, and coordinate the activities of the Concessioner within and [as] they relate to [the Museum].'" [ECF Nos. 28-1 at 27, 30 at 2]. The sentence following this quoted statement explains further the supervisory role of the Superintendent, through designated representatives, anticipated by the contract, stating that the responsibilities "will include reviewing the Equal Employment Opportunity Policy and Affirmative Action Plan; inspecting facilities; approving rates charged; approving all services offered; evaluating concession operations; authorizing all improvements to facilities; and monitoring other activities involved in administering the CONTRACT" [ECF No. 28-1 at 27].

Canteen Services provides a range of duties and housekeeping services for the NPS at the Museum location, pursuant to the terms of Concession Contract No, CC-JEFF001-05 [ECF Nos. 28, 28-1]. Among other things, this contract specifies that Canteen Services is assigned the responsibility to:

    6. Provide housekeeping services for:

        a. Floor area within six feet of vending machines.

        b. Areas assigned for cold storage and recyclable storage, and the areas within six feet of the cold storage and recycle dumpster.

        c. Drink spills anywhere in the lobby or entryways. Spills are to be cleaned up within five (5) minutes of the notification of the spill.

[ECF No. 28-1 at 37-38]. The Concession Contract also specifies that Canteen Services is to provide pagers to its employees so they can be notified of spills needing attention [ECF No. 28-1

at 38]. The contract requires Canteen Services to provide, operate and maintain its "required and authorized visitor services and any related support facilities and services in accordance with this CONTRACT to such an extent and in a manner considered satisfactory by the Director [of the NPS]" [ECF No. 28-1 at 6]. Section 9 of the contract addresses Canteen Services' maintenance obligation, and provides that Canteen services "shall be responsible for maintenance, repairs, housekeeping and groundskeeeping for all Concession facility to the satisfaction of the Director" [ECF No. 18-1 at 15]. This section also states "the Director, acting through the Superintendent, shall undertake appropriate inspections, and shall establish and revise, as necessary, a Maintenance Plan consisting of specific maintenance requirements which shall be adhered to by the Concessioner" [ECF No. 28-1 at 15]. It further provides that the Director has discretion to "make reasonable modifications to the Maintenance Plan from time to time after consultation with the Concessioner" [ECF No. 28-1 at 15]. The Contract also imposes certain liability insurance requirements on Canteen Services, requiring it to obtain and maintain minimum coverage limits for, among other things, bodily injury [ECF No. 28-1 at 40].

  The Court finds that Government's retention of control in its relationship with Canteen Services does not "go beyond securing compliance with the contract[], such as controlling the details of the manner in which the work is done." *See Pauley*, 460 F.3d at 1074 (internal quotation and citation omitted). The contractual control retained by Government does not touch upon the manner in which the work performed by Canteen Services is done, and does not constitute substantial involvement in overseeing or controlling the detailed physical performance of Canteen Services's work. Consequently, the Court finds that Government did not exercise the type of day-to-day control over the physical performance of Canteen Services's employees that

7

would allow them to be considered government employees for purposes of the FTCA. *See Kirchmann*, 8 F.3d at 1275.

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted). The Court will grant Government's Motion to Dismiss For Lack of Subject Matter Jurisdiction, and will deny, as moot, Government's Motion for Summary Judgment.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 27] is **GRANTED**. Plaintiff's Complaint [ECF No. 1] is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 19] is **DENIED as moot.**

Dated this   30th   day of August, 2013.

*E. Richard Webber* (signature)

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE